# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-00909-COA

**HENRY W. KINNEY**  **APPELLANT**

**v.**

**HARRISON COUNTY BOARD OF SUPERVISORS**  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2019 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | HENRY W. KINNEY (PRO SE) |
| ATTORNEYS FOR APPELLEE: | TIM C. HOLLEMAN HOLLIS TAYLOR HOLLEMAN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 07/28/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     A homeowner objected to a conditional use permit granted to a landowner who wanted to place a manufactured home on his property. Because the Board of Supervisors' decision to grant the permit was fairly debatable, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     In August 2015, Dennis Ratcliff submitted an application for a conditional use permit to locate a manufactured home on his property in Harrison County. In the application, Ratcliff stated that he and his wife were "senior citizens now on a fixed income" and "both disabled—Mr. Ratcliff['s being] service connected [as a] veteran of USMC. Mrs. Ratcliff

100% disabled on Social Security Disability." Ratcliff explained that due to being on a fixed income, they were no longer able to afford their house note and intended to move into a manufactured home.

¶3.    A month later, the Harrison County Planning Commission approved Ratcliff's application and granted him a conditional use permit to place a manufactured home on his property. The Commission explained that "[a]ll Conditional use Permits approved by the Planning Commission are valid for six (6) months from the date of issuance and variances, unless otherwise specified by the Planning Commission, shall be void if the project has not commenced within one year of approval."

¶4.    Shortly thereafter, Ratcliff and his wife divorced, causing him even greater financial strain. As a result, Ratcliff could no longer afford to purchase a manufactured home, and his permit expired.

¶5.    It was not until May 2017 when Ratcliff was finally prepared to purchase and locate a manufactured home on the property. At that time, Ratcliff sought an extension of his conditional use permit. In his request, Ratcliff stated that he was seeking the extension for a "double wide mobile home" and that he was in the process of purchasing a "2007 Cavalier 32' x 60' double wide with removable tongues[.]" The Commission approved his request and granted an extension of his original permit.

¶6.    Henry Kinney, a Harrison County resident, appealed the Commission's decision to the Board of Supervisors of Harrison County. The Board approved the appeal and sent the case

back the Commission for a new hearing "to make a proper development of the record[.]"

¶7.     Kinney appeared at the new Commission hearing in opposition to the extension. The Commission questioned whether Kinney had standing because the only property he owned was nearly two miles away in a different neighborhood than where Ratcliff wanted to locate his manufactured home.

¶8.     After hearing all of the testimony and reviewing the entire record, the Commission again granted Ratcliff an extension of his conditional use permit. Then, Kinney again appealed to the Board. The Board voted three to one to dismiss the appeal for Kinney's lack of standing or, in the alternative, deny the appeal.

¶9.     Kinney then appealed the Board's decision by a bill of exceptions to the circuit court. The court affirmed the Board and subsequently denied Kinney's motion for a new trial.

¶10.    Aggrieved, Kinney now argues that the Board exceeded its authority in granting the permit and that its decision was not supported by substantial evidence.

## STANDARD OF REVIEW

¶11.    "In reviewing [a local zoning authority's] decision, we will not reverse unless the decision was unsupported by substantial evidence; was arbitrary or capricious; was beyond the Board's scope or powers; or violated the constitutional or statutory rights of the aggrieved party." *Kinney v. Harrison Cty. Bd. of Supervisors*, 172 So. 3d 1266, 1269 (¶9) (Miss. Ct. App. 2015). "Indeed, if the zoning authority's decision appears fairly debatable, the decision must be affirmed." *Id.*

3

## ANALYSIS

**I.      The Board did not exceed its authority in granting a conditional use permit for a manufactured home.**

¶12.    Kinney alleges that the Board exceeded its authority by granting a conditional use permit for a mobile home where it was not permitted and by granting a permit for a manufactured home when the request was for a mobile home.

¶13.    The subject property is located in an area zoned "R-2 Medium Density Residential District." The Harrison County, Mississippi Unified Development Code does not allow the placement of mobile homes in this type of district. However, manufactured homes are allowed with a conditional use permit.

¶14.    The confusion is within Ratcliff's use of the common terms "manufactured home" and "mobile home." Like many people, he uses them interchangeably. However, they have distinct legal meanings.[1] In his original application, Ratcliff exclusively used the term "manufactured home." When he requested an extension of the original permit, Ratcliff used the phrase "mobile home." Kinney argues that the request constituted an entirely new application in which Ratcliff sought to locate a *mobile* home—not a *manufactured* home—on

---

[1] A "manufactured home means a structure defined by, and constructed in accordance with, the National Manufacturing Housing Construction and Safety Standards Act of 1974 . . . and manufactured after June 14, 1976." Miss. Code Ann. § 75-49-3(a) (Rev. 2016) (citation and internal quotation mark omitted).

In contrast, a "mobile home means a structure manufactured *before* June 15, 1976, that is not constructed in accordance with the National Manufactured Housing Construction and Safety Standards Act of 1974[.]" Miss. Code Ann. § 75-49-3(b) (emphasis added).

Because Ratcliff's proposed home was manufactured in 2007—long after 1976—it falls within the manufactured home category.

the property. He contends that the Board erred in granting the request as conditional use permits are not allowed for mobile homes in that zoning area.

¶15. The Board argues that the request was for an extension of the original conditional use permit for a manufactured home and Ratcliff's usage of the term "mobile home" was merely a scrivener's error. At the Board meeting, Ratcliff testified, "I use the term mobile home. . . . If I made a mistake on that, [I meant] manufactured home."

¶16. The original permit was granted for the exclusive use of locating a manufactured home on the property. At the hearings, the Commission referred to the request for extension as one for a manufactured home. The Board subsequently approved the Commission's grant of a conditional use permit "for the placement of a manufactured home." Contrary to Kinney's argument, the Board never granted a conditional use permit for a mobile home. Nor did Ratcliff actually intend to place one on the property. As a result, we affirm.

> **II. The Board was not required to make specific findings of fact because it imposed conditions with the granting of the conditional use permit.**

¶17. Kinney argues that the Board erred by not making specific findings of fact for each of the required elements for a conditional use permit.

¶18. "[G]ranting [a] conditional use permit and imposing conditions upon the granting of that permit, is tantamount to a finding of fact by the . . . Board of Supervisors that the [required elements] were answered and found in favor of the applicants." *Perez*, 882 So. 2d at 220 (¶7) (quoting *Barnes v. DeSoto Cty. Bd. of Supervisors*, 553 So. 2d 508, 511 (Miss.

5

1989)).

¶19.    Section 1404.03 of the Harrison County, Mississippi Unified Development Code provides eight provisions to be considered when granting a conditional use permit. The provisions can be summarized as follows:

1.    The proposed use must be "harmonious with and in accordance with" the objective or purpose of the Zoning Code or County Comprehensive Plan.

2.    "The proposed use will comply with all applicable zoning district, development standards, and supplemental use requirements."

3.    The proposed conditional use must conform to the character of, and not have an adverse effect on, the neighborhood in which it is located.

4.    The area "will be adequately served by essential public facilities and services[.]"

5.    "The proposed use will not be detrimental to the economic welfare of the community."

6.    The proposed use will not be a nuisance incompatible "with the uses permitted in the base zoning district."

7.    "Vehicular approaches to the property shall be designed as not to create an interference with traffic on surrounding public and/or private streets or roads."

8.    "The proposed use will not be detrimental to the property values in the immediate vicinity."

¶20.    Here, the Board and the Commission considered many of these factors. The Commission specifically addressed whether the property had water and sewer. Further, one of the commissioners went through the neighborhood and found that there were a number of

6

manufactured homes in the proposed area. The Commission found that the neighborhood where the property is located consisted of half manufactured homes and half conventionally built homes. Both the Commission and the Board found that "the proposed development is compatible with the neighborhood as described in the application."

¶21. Further, the Board granted the permit under the condition that it be used exclusively for a manufactured home. As this "is tantamount to a finding of fact by the Board," we decline to find error.

### III. The Board's decision was supported by substantial evidence.

¶22. Kinney also argues that the Board's decision was not supported by substantial evidence.

¶23. "[W]e treat the Board as untethered and free when using their own common knowledge and familiarity in the disputed matter, in addition to the testimony and debate provided at the hearing." *Perez*, 882 So. 2d at 220 (¶8). "[T]he party challenging the governing body bears the burden of proof showing that the decision rendered is arbitrary, capricious, discriminatory, or beyond the legal authority of the city board, or unsupported by substantial evidence." *Id*. The burden of proof is on the challenger to show that the Board's decision was not supported by substantial evidence. *Id*. at 219 (¶7).

¶24. The Board based its decision on the Commission's findings, the transcripts from the original and subsequent zoning proceedings, the transcript from the first Board hearing, letters in support of and in opposition to the permit, and numerous photographs. The Board

7

also reviewed Ratcliff's original application and exhibits which addressed many of the enumerated considerations. Additionally, the Board based its decision on its own familiarity and common knowledge with the area.

¶25. The Board's thorough review of the testimony and evidence from both sides, in addition to the members' personal knowledge, leads us to conclude that the Board's decision was "fairly debatable." "Fairly debatable is the antithesis of arbitrary and capricious." *Kinney*, 172 So. 3d at 1271 (¶18). "Indeed, where the question is fairly debatable, the decision of the Board must be affirmed." *Id.* Accordingly, we must affirm the Board's decision to grant the conditional use permit.

## CONCLUSION

¶26. We find that the Board's decision is supported by substantial evidence and "fairly debatable." Therefore, the Board's decision to grant the conditional use permit is affirmed.

¶27. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR.**